```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x    08 CV 10110
INTERSTATE WASTE SERVICES HOLDING               :
CO., INC.,                                      :
                                                :    08-CV-
                            Plaintiff,          :
                                                :
            -against-                           :    COMPLAINT
                                                :
DONATO MARANGI, INC., and MICHAEL               :    Jury trial demanded
DIMASE,                                         :
                                                :
                            Defendants.         x
-------------------------------------------------------------
```

1. Plaintiff Interstate Waste Services Holding Co., Inc. ("Interstate" or the "Company"), a waste management company, brings this action for injunctive relief, compensatory and punitive damages and other remedies against its competitor Donato Marangi, Inc. ("Marangi") and Interstate's former New York sales employee, Michael DiMase ("DiMase"), who now, upon information and belief, is employed by Marangi in a similar capacity.

## INTRODUCTION

2. An investigation and review of the Company computer DiMase used while employed by Interstate has revealed that DiMase, shortly before he resigned from Interstate, e-mailed to a personal, non-business e-mail account a copy of a mammoth Interstate computer file containing identifying information, pricing analyses and related confidential and proprietary information relating to thousands of Interstate's customers in the State of New York.

3. Upon information and belief, since DiMase's hiring by Marangi, he and other Marangi employees, on behalf of and for the benefit of Marangi, have engaged in targeted

MEI 7901469v.1

solicitations of Interstate's New York customers, presumably with the aid of Interstate's confidential and proprietary information.

4. Upon information and belief, employees of Marangi, on behalf of and for the benefit of Marangi, have also encouraged and induced customers of Interstate to breach their contracts for services with Interstate.

5. Interstate herein seeks relief for Marangi's and DiMase's wrongful conduct, violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, breach of DiMase's duty of loyalty to Interstate, misappropriation of trade secrets, conversion, tortious interference with contract and advantageous business relations and unfair competition.

## THE PARTIES

6. Plaintiff Interstate is a Delaware corporation with its principal place of business located in Ramsey, New Jersey. Interstate provides a wide range of waste management services for commercial and residential customers in New York, New Jersey, Pennsylvania, Massachusetts and Vermont.

7. Upon information and belief, defendant Marangi is a New York corporation with its principal place of business located in Valley Cottage, New York. Upon information and belief, Marangi is engaged in providing carting and waste disposal services in Orange and Rockland Counties in the State of New York. Marangi is a direct competitor of Interstate.

8. Upon information and belief, DiMase is an individual who resides at 125 Senate Road, Milford, Pennsylvania 18337. From September 2006 until his resignation effective September 19, 2008, DiMase was an employee of Interstate, in which capacity he regularly engaged in sales and marketing efforts on Interstate's behalf in the State of New York.

ME1 7901469v.1

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1331 and 1367(a) because a federal question is presented and all other claims are so related to claims in the action within this Court's original jurisdiction that they form part of the same case or controversy.

10. This Court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the matter in controversy (including without limitation Interstate's requests for compensatory damages and injunctive relief herein) exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

11. Venue is proper pursuant to 28 U.S.C. §1391(b)(1) because Marangi is considered to reside in New York for venue purposes pursuant to 28 U.S.C. §1391(c). Venue is also proper in New York pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events and omissions giving rise to the claim occurred in New York and a substantial part of the property that is the subject of this action is situated in New York.

## FACTUAL BACKGROUND

### Interstate's Confidential Information

12. Interstate enters into written contracts with almost all of its waste removal customers. The contracts specify the size or volume of the dumpster or dumpsters the customer will use, how frequently Interstate will empty them, the price for Interstate's services and how long Interstate's service will continue.

13. Most of Interstate's contracts contain liquidated damages provisions in the event of breach, which state that,

> [I]n the event of a breach or termination, [Interstate] shall receive as liquidated damages, and not as a penalty, an amount equal to

>   20% of the aggregate monthly service charge then in effect for the balance of the term of this agreement, together with all costs including reasonable attorney's fees incurred by [Interstate] in enforcing its rights hereunder.

14. Interstate's acquires, compiles, maintains and uses varieties of confidential information that are critical to its competitive success, including its customers' names and addresses, the expiration dates of their contracts with Interstate, the total monthly price paid by a customer for Interstate's services, the unit price, container size and pick-up frequency for a customer, all of which together with other confidential data comprise a comprehensive database of information about its thousands of customers. Interstate has expended a significant amount of time, effort and resources to obtain and retain customers, to compile customer data electronically, and to maintain the confidentiality of such information.

15. Interstate employs a sales force to find and develop relationships with prospective customers and explain the relative merits of Interstate's services and competitive pricing. Interstate's sales employees have access to various confidential information, including lists of Interstate's customers, pricing information, and contracts.

### Interstate's Hiring of DiMase

16. Interstate hired DiMase as a NY Market Area Sales Representative on or about September 29, 2006.

17. DiMase was responsible for obtaining and renewing solid waste removal contracts with over 2,000 Interstate customers in Orange and Rockland counties.

18. Interstate fairly compensated DiMase for his efforts at a base annual salary of approximately $63,000 plus commissions, which, if DiMase met his sales target, entitled him to total annual compensation of $100,000 to $150,000.

19. Interstate gave DiMase a computer to use for his work, as well as a Company e-mail address. For the last six months of his employment with Interstate, DiMase reported directly to supervisor Adam Pelish.

20. After DiMase became an Interstate employee, Interstate entrusted him with access to certain confidential information in the course of his employment and for the exclusive purpose of performing his employment related responsibilities.

### DiMase's Access to the "Customer Pricing Analysis"

21. In the summer of 2008, Interstate was planning a rate increase for solid waste removal services. As part of the planning process, each sale representative was asked to review data regarding the customers for which they were responsible to determine the applicability of the increase. To facilitate this review, the accounting department prepared a report, in the form of an Excel spreadsheet, called "Customer Pricing Analysis."

22. The Customer Pricing Analysis is approximately 98 pages long and contains key information for virtually every solid waste removal customer within Interstate's entire New York and parts of New Jersey commercial and municipal businesses, and includes information such as the duration of the customer's contract, the expiration date of the contract, the quantity of waste being removed, the frequency of removal, the total price and the price rate per yard of specified volume of waste. The Customer Pricing Analysis contains data regarding approximately 6,000 Interstate customers.

23. The Customer Pricing Analysis is the result of years of effort on the part of Interstate, and contains a wealth of valuable and proprietary information about Interstate's business and customers that is non-public and could not be obtained anywhere else.

24. Ordinarily, neither DiMase nor any of the other sales representative in the New York Market Area would have access to the Customer Pricing Analysis or to any of the other information in Interstate's customer database.

25. In the summer of 2008, as part of the rate increase planning process, each New York Market Area sales representative, including DiMase, was e-mailed a copy of the Customer Pricing Analysis to his Company e-mail account, for the purpose of reviewing data regarding the customers for which they were responsible.

### DiMase's Resignation and Marangi's Solicitations of Interstate's Customers

26. On or about September 19, 2008, DiMase informed Interstate that he was resigning from his employment, effective immediately. In his resignation letter, DiMase expressed dissatisfaction with his compensation. He also told his supervisor Adam Pelish that he was going to work for a waste hauler in western Pennsylvania and wanted to "slow his life down."

27. DiMase misrepresented and hid his true intentions from his supervisor. In fact, after leaving Interstate, DiMase went directly to work as a sales employee for Interstate's competitor Marangi in the same New York territory where he had worked for Interstate.

28. Upon information and belief, DiMase's responsibilities included selling Marangi's waste hauling and disposal services to customers and prospective customers in Rockland and Orange Counties, New York.

29. Upon information and belief, in or about late September 2008, following his resignation from Interstate, DiMase contacted a school that was an existing Interstate customer for purposes of inducing the school to breach its contract with Interstate and instead purchase services from Marangi. If the school had breached its contact with Interstate, it would be liable for liquidated damages under the terms of the contract. Upon information and belief, DiMase

offered the school, as an inducement to breach, free services from Marangi in an amount and of a value equivalent to the liquidated damages that would be due Interstate in the event of a breach of contract.

30. Upon information and belief, DiMase also used his knowledge of Interstate's confidential customer information by specifically targeting and soliciting certain Interstate customers on Marangi's behalf and offering to undercut the rates the customers were paying to Interstate. DiMase and Marangi knew or should have known that such customers were under contract with Interstate.

31. Upon information and belief, another Marangi agent solicited an Interstate customer located in Monroe, New York (the "Monroe customer"), for purposes of inducing the customer to breach its contract with Interstate and instead purchase services from Marangi. If the Monroe customer breached its contact with Interstate, it would be liable for liquidated damages under the terms of the contract. Upon information and belief, the Marangi agent offered the Monroe customer, as an inducement to breach, "free service" from Marangi in an amount and of a value equivalent to the liquidated damages that would be due Interstate in the event of a breach of contract.

32. Upon information and belief, Marangi, by its authorized agents, including but not limited to DiMase, has by means of similar tactics as described herein induced customers of Interstate to breach their contracts with Interstate and instead purchase similar services from Marangi.

### DiMase's Misappropriation of Interstate's Confidential Information

33. Following DiMase's resignation and solicitations of Interstate's customers on behalf of Marangi, Interstate commenced an investigation into DiMase's activities, including a

MEI 7901469v.1

review of the hard-drive of the Company computer that DiMase used while employed by Interstate.

34. Interstate's investigation revealed that on or about August 14, 2008, just one month before his resignation from employment, DiMase sent an e-mail from his Company account to the address, mdimase50@yahoo.com, which upon information and belief is a personal e-mail account maintained and/or controlled by DiMase (the "August 14 e-mail").

35. The August 14 e-mail contained no message text, but attached to it was a copy of the Interstate's confidential and proprietary Customer Pricing Analysis.

36. DiMase had no legitimate business purpose in forwarding Interstate's confidential and proprietary Customer Pricing Analysis to a personal e-mail address outside of the Company.

37. At no time was DiMase authorized or granted permission to forward Interstate's confidential and proprietary Customer Pricing Analysis to a personal e-mail address outside of the Company.

38. Upon information and belief, in the course of his employment with Marangi, DiMase has improperly disclosed and disseminated the Customer Pricing Analysis or copies thereof and/or confidential data and information contained therein to one or more officers, agents or employees of Marangi.

39. Upon information and belief, in the course of his employment with Marangi, DiMase and one or more officers, agents or employees of Marangi have improperly and without authorization used the Customer Pricing Analysis and/or confidential data and information contained therein for Marangi's benefit in effort to obtain and divert customers and business from Interstate to Marangi.

## Interstate's Efforts to Recover Its Proprietary Information

40. On October 3, 2008, Interstate by its counsel wrote to Marangi and DiMase and informed them that Interstate believed that DiMase and Marangi were using Interstate's confidential information to solicit Interstate's customers and demanded that such conduct cease.

41. On October 9, 2008, Marangi and DiMase by their counsel responded to Interstate's October 3 letter, denying that DiMase was in possession of any Interstate property or that he had removed any Interstate property from its premises. However, they did not deny that DiMase had been soliciting Interstate's customers, using information about the customers' relationships with Interstate that he learned through his employment with Interstate.

42. Subsequently, Interstate discovered DiMase's August 14 e-mail forwarding its confidential and proprietary Customer Pricing Analysis to his personal e-mail account.

43. On October 29, 2008, following its discovery of the August 14 e-mail, Interstate by its counsel again wrote to counsel for Marangi and DiMase and stated that Interstate had uncovered irrefutable evidence that DiMase had removed confidential and proprietary information from Interstate shortly before he had resigned from Interstate's employ. Interstate demanded that Marangi take immediate steps to rectify the situation and that DiMase return the misappropriated property.

44. Neither Marangi nor DiMase nor their counsel responded to Interstate's October 29 letter.

45. In a last-ditch effort to secure the voluntary return of its confidential and proprietary information and to avoid litigation, on November 6, 2008, Interstate's counsel placed a telephone call to counsel for Marangi and DiMase. Counsel for Marangi and DiMase did not return the call

9

ME1 7901469v.1

until the following week, and agreed to look further into the matter. Since then, Interstate has not obtained the return of its proprietary and confidential information.

### Interstate's Irreparable Injury

46. The Customer Pricing Analysis that DiMase forwarded to his own personal e-mail account without authorization and upon information and belief disclosed to Marangi is highly confidential and proprietary. It includes the names of virtually all Interstate's New York customers, details of their contracts, usage of Interstate's services, and pricing. The information was compiled and secured by Interstate at significant expense and effort and constitutes an extremely valuable trade secret that is critical to Interstate's market share and profitability.

47. Upon information and belief, Marangi and DiMase have used and will continue to use confidential information misappropriated from Interstate by DiMase to solicit Interstate's customers for Marangi's services, to divert business from Interstate to Marangi and to induce Interstate customers to breach their contracts with Interstate.

48. Defendants' interference with and consequent damage to Interstate's customer relationships will cause irreparable injury to Interstate for which money damages alone are inadequate.

### FIRST CAUSE OF ACTION
### Misappropriation of Confidential Information and Trade Secrets

49. Interstate repeats and realleges the foregoing paragraphs 1 thought 48 as though they were fully set forth herein.

50. In the course of his employment, Interstate entrusted its former employee DiMase with access to its confidential information, including but not limited to the Customer Pricing Analysis, which constitute trade secrets.

51. Interstate's Customer Pricing Analysis contains extremely valuable information that is non-public and the result of Interstate's expenditure of substantial resource to acquire and compile.

52. By the actions complained of herein, DiMase misappropriated and used on his own behalf and on behalf of Marangi Interstate's confidential information and trade secrets, including but not limited to the Customer Pricing Analysis.

53. DiMase acted with Marangi's knowledge and encouragement and Marangi has ratified his actions.

54. DiMase knew or should have known that the Customer Pricing Analysis and other confidential and proprietary information of Interstate constitute trade secrets.

55. Marangi knew or should have known that the Customer Pricing Analysis and other confidential and proprietary information of Interstate constitute trade secrets.

56. As a result of Marangi's and DiMase's conduct, Interstate has suffered and will continue to suffer substantial harm in an amount to be determined at trial and is entitled to injunctive relief.

## SECOND CAUSE OF ACTION

### Violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030

57. Interstate repeats and realleges the foregoing paragraphs 1 through 56 as though they were fully set forth herein.

58. Interstate's computer system is used in interstate commerce and communication.

59. On one or more occasions, including but not limited to on August 14, 2008, DiMase knowingly and with intent to defraud, accessed Interstate's computer system and obtained for

11

himself a copy of confidential and proprietary information belonging to Interstate, including but not limited to the Customer Pricing Analysis.

60. Upon information and belief, as of the date DiMase so accessed Interstate's computer system, DiMase knew but failed to disclose to Interstate that he intended to resign his employment and compete with Interstate in the near future.

61. In so accessing the Interstate computer system, DiMase acted outside the scope of his employment with Interstate and intentionally accessed Interstate's computer system without authorization or in excess of his authorization to do so.

62. DiMase's conduct has caused damage and loss to Interstate within the meaning of 18 U.S.C. § 1030 in an amount of more than $5,000, including but not limited to losses sustained in investigating, responding to and taking remedial steps regarding DiMase's actions.

63. By reason of DiMase's actions, Interstate has been damaged in an amount to be determined at trial and is entitled to injunctive relief.

## THIRD CAUSE OF ACTION

### Breach of Duty of Loyalty

64. Interstate repeats and realleges the foregoing paragraphs 1 through 63 as though they were fully set forth herein.

65. By virtue of his employment with Interstate, DiMase owes Interstate a fiduciary duty of loyalty, including but not limited to a duty not to use the confidential information and trade secrets Interstate entrusted to him in competition with Interstate.

66. By his actions, including those described above, DiMase has violated his duty of loyalty to Interstate.

ME1 7901469v.1

67. As a direct and proximate result of DiMase's actions, Interstate has suffered and continues to suffer substantial and irreparable damages.

## FOURTH CAUSE OF ACTION

### Conversion

68. Interstate repeats and realleges the foregoing paragraphs 1 through 67 as though they were fully set forth herein.

69. Marangi and DiMase have converted property belonging to Interstate without legal justification or privilege, including but not limited to the Customer Pricing Analysis and confidential information about Interstate's services, contracts, customers and prospects.

70. As a result of Marangi's and DiMase's misconduct, Interstate has suffered and will continue to suffer substantial and irreparable harm.

## FIFTH CAUSE OF ACTION

### Tortious Interference with Contract and Advantageous Business Relations

71. Interstate repeats and realleges the foregoing paragraphs 1 through 70 as though they were fully set forth herein.

72. Marangi knew or should have known that Interstate had existing contracts and advantageous business relations with a number of customers and prospective customers.

73. Upon information and believe, Marangi interfered with Interstate's contracts and advantageous business relations with Interstate's customers and prospects by inducing customers to breach contracts with Interstate.

74. On information and belief, Marangi used information misappropriated by DiMase to interfere with Interstate's contracts and advantageous business relations with Interstate's customers and prospects.

13

ME1 7901469v.1

75. Such interference was intentional, malicious and without legal justification, and was conducted by improper means and for an improper purpose.

76. As a result of Marangi's conduct, Interstate has suffered and will continue to suffer substantial and irreparable harm.

## SIXTH CAUSE OF ACTION

### Unfair Competition

77. Interstate repeats and realleges the foregoing paragraphs 1 through 76 as though they were fully set forth herein.

78. Marangi's actions as described herein constitute unfair competition.

79. As a result of Marangi's actions as described above, Interstate has suffered and will continue to suffer substantial and irreparable harm.

### REQUESTED RELIEF

**WHEREFORE**, Interstate respectfully requests that this Court grant the following relief:

A. Enter a preliminary injunction and, after trial, enter a permanent injunction, ordering the defendants to return to Interstate, and not to use, copy, disseminate, disclose, or provide access to, any information, documents, databases, or files that DiMase obtained by virtue of his employment with Interstate regarding Interstate or its services, contracts, customers or prospects;

B. Enter a preliminary injunction and, after trial, enter a permanent injunction, enjoining Marangi and enjoining DiMase for a period of two (2) years from directly or indirectly soliciting any of Interstate's commercial customers in the counties of Orange and Rockland, New York;

C. Enter judgment in Interstate's favor and against each defendant for Interstate's compensatory damages in an amount yet to be determined but in excess of $75,000 on its First through Sixth Causes of Action.

D. Enter judgment in Interstate's favor and against each defendant for punitive damages, reasonable attorneys' fees, interest and costs, and

E. Grant such other or further relief in favor of Interstate as the Court may deem just and proper.

### JURY DEMAND

Interstate hereby demands a jury trial as to all claims so triable.

Dated:  New York, New York
        November 20, 2008

                                    MCCARTER & ENGLISH, LLP

                                    By: /s/ Patrick M. Collins
                                    Patrick M. Collins (PC-4182)
                                    245 Park Avenue
                                    New York, New York 10167
                                    212-609-6849
                                    Attorneys for Plaintiff
                                    INTERSTATE WASTE SERVICES
                                     HOLDING CO., INC.

15

ME1 7901469v.1